71 So.2d 495 (1954)
TATUM
v.
CITY OF HALLANDALE et al.
Supreme Court of Florida. En Banc.
March 19, 1954.
*496 James W. Moore and Frank F. Cosgrove, Miami, for appellant.
James M. Crum and McCune, Hiaasen & Kelley, Fort Lauderdale, for appellees.
DREW, Justice.
This is an appeal from a decree dismissing a complaint to enjoin enforcement of Ordinance No. 181 of the City of Hallandale, Florida, the pertinent sections of which ordinance read as follows:
"Section 8. No person shall make any exhibition flights by carrying banners on, distribute circulars from, or operate loud speaking device from any aircraft flying within or over the corporate limits of the City of Hallandale, without first obtaining a permit to do so from the City Clerk, and payment of a fee of $5.00 for each flight. The City Clerk can issue such permit if the person who will operate the aircraft, in carrying out any of the objects named in this section, is duly licensed by the Civil Aeronautics Authority, the aircraft to be used is licensed by the Civil Aeronautics Authority, and the safety of lives of the inhabitants of the City of Hallandale will not be endangered by the proposed flight, Provided, however, that the permits provided for in this section may be issued by the City Clerk for periods not longer than six months rather than for individual flights, if the safety or lives of the inhabitants of the City of Hallandale will not be endangered by such permit and a permit fee of $25.00 is paid. Provided that such six month's permit shall be revoked by the City Council upon violation of any of the terms or provisions of this Chapter.

* * * * * *
"13. Any person, firm or corporation violating any of the provisions of the ordinance shall, upon conviction thereof, be fined a sum not exceeding $300.00 or by imprisonment for a term not exceeding sixty days, or by both such fine and imprisonment at the discretion of the Municipal Judge."
Appellant is engaged in the business of flying airplanes with advertising banners attached, over Gulfstream Race Track lying wholly within that city, and adjacent territory.
On March 12, 1952, appellant was arrested for flying an airplane towing an advertising banner over the city without a permit, contrary to the provisions of Ordinance No. 181. At the time in question the regulations of the Federal Aeronautics Board required, among other things, a special tow attachment and release mechanism, a Certificate of Waiver to be issued for the flight, and a federal license to fly the airplane. In addition it required the flight to be in compliance with its rules and regulations which provided, among other things maintaining an altitude in excess of 1,000 feet over the city. All of these regulations concerned the safety of the aircraft or other aircraft using the airways.
It is undisputed that in making the flight in question, the appellant while over the city was within a federal civil airway and had complied fully with all requirements therefor of the federal rules and regulations as well as all requirements of the State of Florida.
Appellant does not assert that he was wrongfully denied a permit by the city or even that he ever made application therefor, but instead asserts only that the city was without authority to require such permit. He says that the ordinance is invalid because it exists without charter authority, conflicts with state and federal laws, and contains an unlawful delegation of power to city officials.
The City Charter, Chapter 24545, Laws of Florida, effective May 21, 1947, in paragraph 38 of Section 8, provides that the city shall have power:
"* * * To license and regulate aircraft operated over the City and to stipulate the height at which and the manner in which the same may be operated above the area included in the city limits, and to license and register the pilots thereof."
*497 Thereafter, the Legislature passed what is now Section 330.17, F.S. 1951, F.S.A., which provides:
"It shall be unlawful for any municipality of this state to collect any license or registration fee or tax on any aircraft or glider in this state."
Appellant contends this statute conflicts with and therefore supersedes any authority that may have been granted to the city in its charter to pass Ordinance No. 181. The statute merely prohibits the city from collecting any fee or tax on an airplane or glider. This prohibition does not preclude the city from imposing reasonable license requirements on the operator of an aircraft or glider even though a fee is collected therewith. See State ex rel. Harris v. Quigg, 86 Fla. 51, 54, 96 So. 8, 9. That case involved the construction of what is now Section 320.24, F.S. 1951, F.S.A., which is similar in terms to Section 330.17, supra, except that Section 320.24 applies to "any motor-driven vehicle, trailer or semi-trailer, or motorcycle side car". The City of Miami had passed an ordinance requiring a licensing and fee of each driver of any automobile or truck for hire. In holding that the ordinance was not in conflict with state law, this Court said that the "statutory inhibition is confined to `license or registration fee on any motor-driven vehicle,' and does not include drivers of such vehicles for hire;" and further observed that, "Drivers of motor vehicles for hire in the city may need special regulation and supervision in the public interest, and this is not covered by a state license tax on the vehicle which is used for road maintenance."
Moreover, the ordinance in question requires a permit or licensing of the operator of an airplane but does not impose a license or tax on aircraft. It is not in conflict with Section 330.17, supra.
Appellant further urges that the ordinance is in conflict with state and federal laws and also that these laws evince a purpose to pre-empt the field of aeronautics to the complete exclusion of all related municipal action.
Nothing appears in our state statutes to indicate that municipalities are wholly excluded from all action in that field and activities connected therewith. The rapid development and expansion of air travel and progress with its resulting benefits to the population of the cities, the state, and the nation should be encouraged but by means consistent with the welfare and safety of all. Whether this result can best be achieved, at the present or in the future, by uniformity of regulation and control at the state level or national level, is not for us to determine. Suffice it to say, in disposing of the instant problem, there is no state legislation excluding the municipal action here challenged. On the contrary, the Legislature in 1947 expressly bestowed authority upon the city to enact the ordinance in question.
The extent to which federal legislation in the field of aeronautics has or may exclude local or state control is not yet determined. Respective rights to sovereignty in the airspace are far from settled. See Cooper, State Sovereignty v. Federal Sovereignty of Navigable Airspace, 1948, 15 J.Air L. & Com. 27; Dinu, State Sovereignty in the Navigable Airspace, 1950, 17 J.Air L. & Com. 43. Municipal ordinances in direct conflict with federal regulation are being challenged in cases the decision of which may have "far-reaching effects." See All American Airways, Inc. v. Village of Cedarhurst, 2 Cir., 201 F.2d 273, 277 (upholding temporary injunction restraining enforcement, pending final decision, in a suit to determine the validity of ordinance prohibiting flights below 1,000 feet in conflict with federal regulations requiring a descent over the village as low as 518 feet in approach to an airport outside the village boundaries).
We hold that the owner or operator of an aircraft operating over a municipality of this state for the purpose of exhibiting advertising by signs, sound or otherwise, to the populace of said municipality, *498 is, to the extent of such operation, doing business within said city and is subject to reasonable regulation by such municipality so long as said regulation does not conflict with either a state or federal regulation concerning the operation of aircraft, and relates to matters which are properly subject to the police power of such municipality. "Air commerce" as defined by 49 U.S.C.A. § 401(3), and operating in a "civil airway" as defined by 49 U.S.C.A. § 401(16), together with the regulations thereunder, contemplate a much larger field of operation. The federal law is not concerned with purely local regulations, designed to protect the health, welfare and morals of the inhabitants at the local level except insofar as necessary to provide for the safety of aircraft operating in the civil airways. To put it another way, neither the federal government nor the state government, under present laws, is concerned with the effect of noise or the nature of advertising so far as it affects those on the ground. Such authorities are concerned about the matter only so far as it affects the safety of the operation thereof or other aircraft. So it is, there is a clear and distinct field for the exercise of authority on the local level as well as on a national and state level and there is no need for any conflict.
We do not say that such local regulation could not be handled better on a state level but that, we repeat, is a matter of legislative concern. As of now, the Legislature has given the municipality power to act and we hold it has acted within the bounds of the authority granted. Compare S.S. Pike Co. v. City of New York, 169 Misc. 109, 6 N.Y.S.2d 957.
We find no merit in the contention of appellant that the efficacy of Ordinance No. 181, supra, was impaired by the subsequent passage of an unconstitutional ordinance purporting to deal with a like subject matter. Compare Sawyer v. State, 100 Fla. 1603, 132 So. 188; Messer v. Jackson, 126 Fla. 678, 171 So. 660.
Affirmed.
ROBERTS, C.J., TERRELL, THOMAS and SEBRING, JJ., and PATTERSON, Associate Justice, concur.